**OHIO OIL CO. et al. v. THOMPSON.**

**MAGNOLIA PETROLEUM CO. v. SAME.**

**OHIO OIL CO. v. SAME.**

**Nos. 11915–11917.**

Circuit Court of Appeals, Eighth Circuit.
June 23, 1941.

Rehearing Denied July 14, 1941.

832

Fred H. Kelly, of Mattoon, Ill., and William H. Armstrong, of St. Louis, Mo. (Thomas H. Cobbs, of St. Louis, Mo., and Craig Van Meter, of Mattoon, Ill., on the brief), for appellants.

Thomas T. Railey, of St. Louis, Mo. (Russell L. Dearmont, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This appeal arises out of proceedings in the district court subsequent to the decision of the Supreme Court in Thompson, Trustee, v. Magnolia Petroleum Co. et al., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876. In that case the Supreme Court reversed the decision of this court in Magnolia Petroleum Co. v. Thompson, 8 Cir., 106 F.2d 217. The former appeal to this court was from an interlocutory decree in bankruptcy entered by the district court for the eastern district of Missouri. The issues arose in that court in summary proceedings under § 77 of the Bankruptcy Act, 11 U.S.C.A. §

205, for the reorganization of the Missouri-Illinois Railroad Company, Debtor, a subsidiary of the Missouri Pacific Railroad Company in reorganization in the same proceeding. The trustee petitioned the court to determine title to certain of its right of way land traversing an oil field in Illinois under which the oil was claimed by the oil companies, and for advice and directions pending the determination of title.

The trustee in his petition alleged that a fee-simple title to the right of way land vested in his predecessor under deeds from the former owners and by adverse possession, and that unless he was permitted to enter into a contract for drilling wells on the right of way, extracting the oil and gas and marketing it, the oil and gas would be drawn off through wells drilled on the adjacent lands pending the determination of title. The oil companies claimed that the deeds relied upon by the trustee conveyed only railroad right of way easements and that the fee remained in the grantors under whom the oil companies claimed by virtue of oil leases. They denied the summary jurisdiction of the court to hear and determine the controversy.

The court in an interlocutory order entered November 14, 1938, found that the trustee was in actual possession of the property under a claim of fee-simple ownership and that the court accordingly had summary jurisdiction to determine title.

The court also found that immediate action was necessary to conserve the oil and gas for the benefit of the parties in interest as their rights and title might thereafter be determined.

The interlocutory order enjoined all parties from asserting any adverse claim to the property or to the oil or gas underlying the premises "other than in these proceedings". The trustee was authorized to drill wells, to remove the oil and gas, to sell the same, and after deducting the expenses to impound the remainder of the proceeds for the account of the adverse claimants as their rights might afterwards be determined.

The summary jurisdiction of the court depended upon whether the trustee was in the actual or constructive possession of the property, title to which was in dispute. Upon appeal to this court by the oil companies counsel for the parties agreed "that if the deeds grant and convey a railroad right of

way easement only, such possession [of the trustee] did not extend either actually or constructively to the oil and gas underlying the right of way." 106 F.2d 222. With this understanding this court undertook to construe the language of the deeds. We held that the deeds conveyed a railroad right of way easement only and not a fee-simple title; that the grantee in possession under a deed cannot claim adversely a larger estate in the land granted than is described in his deed; and that the trustee having neither actual nor constructive possession of the fee, the court was without power to determine ownership in a summary proceeding in bankruptcy. We accordingly reversed the interlocutory order with directions to dismiss the trustee's petition for want of jurisdiction.

Upon appeal to the Supreme Court the decision of this court was reversed and the order of the district court was affirmed with a single modification hereinafter noted.

The mandate of the Supreme Court, under date of April 24, 1940, addressed to the "Judges of the District Court of the United States for the Eastern District of Missouri", provided:

"It is now here ordered, adjudged and decreed by this Court that the decree of the said United States Circuit Court of Appeals in this cause be, and the same is hereby, reversed with costs, and that the decree of the District Court, in this cause, be, and the same is hereby, affirmed *except insofar as it provides for adjudication of the disputed ownership in the bankruptcy court.*

\*        \*        \*        \*        \*

"And it is further ordered, That this cause be, and the same is hereby remanded to the District Court of the United States for the Eastern District of Missouri *with instructions to modify its order so as to provide appropriate submission of the question of fee simple ownership of the right of way to the Illinois State Courts.*

\*        \*        \*        \*        \*

"You, therefore, are hereby commanded that such execution and further proceedings be had in said cause, in conformity with the opinion and decree of this Court, as according to right and justice, and the laws of the United States ought to be had, \* \* \*." (Italics supplied.)

For the purpose of executing the mandate, the district court, on May 24, 1940, entered an order continuing in force its

previous interlocutory orders and providing that the

"Trustee shall proceed in appropriate action or actions in the State Courts of Illinois to determine the question of fee-simple ownership of the strip of land on which the right of way of Missouri-Illinois Railroad is situated * * * in * * * Marion County, Illinois.

"Nothing contained in the aforesaid interlocutory decree of November 14, 1938, shall prevent the assertion in such proceedings of adverse claims to title in the State Courts of Illinois by any proper party in interest.

*     *     *     *     *

"This court reserves jurisdiction to amplify or modify this order as may hereafter be deemed proper, and reserves jurisdiction to enter final order after final decisions have been obtained in the litigation herein directed to be instituted in the State Courts of Illinois."

Pursuant to the directions of the court the trustee instituted two suits in the Circuit Court of Marion County, Illinois, to quiet title to the fee-simple title to the strip of land in dispute. The oil companies filed answers and counterclaims. In the counterclaims the oil companies prayed (1) for a permanent injunction restraining the trustee from drilling for oil and gas on the land title to which was in dispute; (2) for an accounting for the oil and gas produced from the premises and marketed and sold by the trustee pursuant to the interlocutory order of the court, and (3) for damages for trespass upon the premises.

On November 16, 1940, upon motion of the trustee, to which the oil companies objected, the court amplified its order of May 24, 1940, by an order providing that "Pending determination in the courts of Illinois of 'the question of fee-simple ownership of the right of way in question, and the entry of an appropriate order by this court in conformity with the construction of the conveyances in question by the Illinois Courts' " the orders of the court should not be construed (1) to permit the oil companies to seek in the Illinois courts through counterclaim or otherwise an order enjoining the trustee from drilling and conserving the oil and gas from the right of way, nor (2) to permit an accounting, nor (3) to permit appellants to seek damages for trespass, and reserving exclusive jurisdiction in the district court to determine these questions. This order in effect enjoined the oil companies from prosecuting the counterclaims in the state courts.

The present appeal is from the order of November 16, 1940, amplifying and amending the order of May 24, 1940. It is the contention of appellants (1) that the order is appealable under § 129 of the Judicial Code, 28 U.S.C.A. § 227, and (2) that properly construed the mandate of the Supreme Court does not limit the right of the parties to a partial determination of their rights in the suits instituted in the courts of Illinois. It is contended that when by direction of the bankruptcy court the trustee commenced the plenary suits in the Circuit Court of Marion County, Illinois, jurisdiction was relinquished to that court and the trustee became an ordinary litigant with the same burdens and liabilities that any litigant would have in a similar case; that when a trustee in bankruptcy, with authority to do so, enters a state court to litigate his right to property, the state court taking jurisdiction of the litigation has jurisdiction of all the incidents of the issues; that the order appealed from is in excess of the directions of the mandate and therefore beyond the jurisdiction of the district court; and that the order is in effect a refusal on the part of the district court to enforce the mandate.

The appellee contends (1) that the alleged failure of the district court properly to construe and obey the mandate of the Supreme Court cannot be reviewed by this court on appeal, and (2), that the district court did obey and properly construe the mandate.

▮ The paramount question presented by these contentions for our determination is the extent of the jurisdiction of this court. In approaching the consideration of that question we are guided by certain well-settled rules. The first and most fundamental of these rules, affirmed in cases too numerous for citation, is that: "When the supreme court have executed their power, in a cause before them, and their final decree or judgment requires some further act to be done, it cannot issue an execution, but shall send a special mandate to the court below to award it. * * * Whatever was before the court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution; nor give

any other or further relief, nor review it upon any matter decided on appeal, for error apparent; nor intermeddle with it, further than to settle so much as has been remanded." Sibbald v. United States, 37 U.S. 488, 492, 12 Pet. 488, 492, 9 L.Ed. 1167. See also Thornton v. Carter, 8 Cir., 109 F.2d 316, 320, and cases cited in footnote 4.

Unless the mandate leaves something to the judgment or discretion of the inferior court, and that court mistakes or misconstrues or does not give full effect to the mandate, its action may be controlled by the Supreme Court either upon a new appeal or by writ of mandamus. City Nat. Bank v. Hunter, 152 U.S. 512, 14 S.Ct. 675, 38 L.Ed. 534; In re Sanford Fork & Tool Company, 160 U.S. 247, 16 S.Ct. 291, 40 L. Ed. 414; In re Potts, 166 U.S. 263, 17 S.Ct. 520, 41 L.Ed. 994; In re Blake and Others, 175 U.S. 114, 117, 20 S.Ct. 42, 44 L.Ed. 94; Illinois v. Illinois Central R. R. Co., 184 U. S. 77, 91, 22 S.Ct. 300, 46 L.Ed. 440; Baltimore & Ohio R. R. Co. v. United States, 279 U.S. 781, 785, 49 S.Ct. 492, 73 L.Ed. 954.

It often happens that the appeal to the Supreme Court does not involve all the issues pending in the inferior court; or that the decision and mandate of the Supreme Court leave some question open for the determination of the inferior court; or that in further proceedings in which the appeal occurs new issues may arise and new parties may join or be joined in the litigation. In all such cases the decision of the lower court upon such matter may be reviewed by the proper court. Ex parte The Union Steamboat Company, 178 U.S. 317, 319, 20 S.Ct. 904, 44 L.Ed. 1084; In re City of Louisville, 231 U.S. 639, 645, 34 S.Ct. 255, 58 L.Ed. 413; Mason v. Pewabic Mining Co., 153 U.S. 361, 14 S.Ct. 847, 38 L.Ed. 745; Illinois Bell Telephone Co. v. Slattery, 7 Cir., 98 F.2d 930; Id., 7 Cir., 102 F.2d 58. On remand the inferior courts are free as to all issues not within the compass of the mandate. Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184.

The decision of the district court of issues not submitted to the Supreme Court, of new issues, and of questions left open may be appealed to the Circuit Court of Appeals in all cases where that court would otherwise have jurisdiction. Mason v. Pewabic Mining Co., supra; Illinois Bell Telephone Co. v. Slattery, supra.

In appeals to this court from decisions of the district court on questions arising in proceedings subsequent to the mandate of the Supreme Court, we may examine the opinion and mandate of that court to determine whether or not the decision is upon a question left open, upon a new issue, or upon some matter properly appealable to this court. If we find that no such question is involved we can go no further. We have no power to review the decisions of the Supreme Court nor to construe and enforce its mandates in respect of matters found to be within the compass of its decisions. In Re Sanford Fork & Tool Co., supra [160 U.S. 247, 16 S.Ct. 293, 40 L.Ed. 414], the Supreme Court said: "Either upon an application for a writ of mandamus or upon a new appeal it is for this court to construe its own mandate." In the case of Ex parte The First National Bank of Chicago, 207 U.S. 61, 28 S.Ct. 23, 25, 52 L.Ed. 103, on an appeal to the Circuit Court of Appeals, Ex parte Chicago Title & Trust Co., 7 Cir., 146 F. 742, from a case arising in proceedings in the district court subsequent to the issue of a mandate from the Supreme Court, the Circuit Court of Appeals assumed the power to decide and give directions to the district court. Upon writ of error to the Supreme Court the court declared that it was the duty of the district court to follow its mandate "on the authority of this court, not of the circuit court of appeals"; that "The circuit court of appeals had no jurisdiction in the matter." Compare Texas & Pacific Ry. Co. v. Anderson, 149 U.S. 237, 13 S.Ct. 843, 37 L.Ed. 717.

In the instant case the decision and mandate of the Supreme Court left nothing open for the subsequent adjudication of the district court. In its opinion it is stated that "The questions here are [1] whether the bankruptcy court has summary jurisdiction to adjudicate ownership of the right of way lands, and [2] whether that court abused its discretion in ordering the fugitive oil captured and its proceeds impounded pending adjudication of the ownership." 309 U.S. 479, 60 S.Ct. 629, 84 L. Ed. 876. In answer to the first question the court held that the possession of the trustee "was an adequate basis for the District Court's summary jurisdiction"; and in answer to the second question it was held "that it was not an abuse of discretion for the bankruptcy court to authorize the trustee to protect all interests—so far as it appeared possible to do so—by preserving

836

the oil, from waste and depletion, through its extraction and sale with the net proceeds to be impounded until final determination of the controversy over title to the right of way lands." 309 U.S. 482, 60 S.Ct. 630, 84 L.Ed. 876. Nothing remained for the district court to do therefore except to execute the mandate.

We must examine the opinion and mandate one step further, therefore, to determine whether the relief asked in the counterclaims is included within their compass; but not for the purpose of deciding whether the order appealed from is right or wrong, or whether it is in execution of the mandate or in disobedience to its terms. We do not assume to construe or interpret the mandate further than is necessary to determine the jurisdiction of this court.

The mandate instructed the district court "to modify its order so as to provide appropriate submission of the question of fee-simple ownership of the right of way to the Illinois State courts." The district court was required to construe and execute the intent of the Supreme Court embodied in the words, "appropriate submission of the question of fee-simple ownership." If it has by enjoining the prosecution of the counterclaims refused to execute the mandate, the remedy must be sought in the Supreme Court. This court is without jurisdiction to grant relief.

It is clear that if the Illinois courts decide the question of ownership in favor of the trustee, the issues tendered in the counterclaims will necessarily be settled by that decision. On the other hand, if the decision as to ownership is adverse to the trustee, the oil companies will be entitled to a hearing and adjudication of those issues either in the courts of Illinois or in the bankruptcy court.

■ Both the bankruptcy court and the Illinois courts have power to adjudicate the issues presented in the counterclaims when submitted in connection with adverse claims of ownership in a case within the jurisdiction of the court. The power of the bankruptcy courts in such cases has long been recognized. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. And the courts of Illinois have an equal plenary power. Chapter 110, § 162 of the Illinois Revised Statutes 1939, provides: " * * * any demand by one or more defendants against one or more plaintiffs * * * whether in the nature of set-off, recoupment, cross-bill in equity or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross-demand in any action, and when so pleaded shall be called a counterclaim."

■ Under Illinois law "when a court of equity has jurisdiction of a cause for one purpose, it will retain such jurisdiction for all related purposes", Martin v. Strubel, 367 Ill. 21, 10 N.E.2d 325, 326; and as an incident to a proceeding to quiet title the court may grant an injunction, order an accounting and award damages, Zeigler v. Brenneman, 237 Ill. 15, 86 N.E. 597. See also Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332.

■ In construing the mandate the district court was called upon to determine whether the instruction of the Supreme Court directed relinquishment to the state court of the issue of fee-simple ownership with all its incidents or whether it should surrender jurisdiction over a part of the questions involved in that issue and retain jurisdiction over a part. In making this decision it was the court's duty to consult both the mandate and the opinion. In re Sanford Fork & Tool Company, supra, 160 U.S. at page 256, 16 S.Ct. 291, 40 L.Ed. 414. In its opinion in the instant case the Supreme Court said: "An order to the trustee to proceed in the Illinois courts for a decision on the ownership of the fee to the right of way lands will be comparable to one in which the bankruptcy court, preserving the status quo the while, orders a trustee to determine in a plenary State court suit the legal right to property alleged by the trustee to have been fraudulently transferred by the bankrupt." The cases brought by the trustee in the state court are plenary suits. It has often been affirmed in cases of bankruptcy that, although the courts of the United States have exclusive jurisdiction "of all matters and proceedings in bankruptcy", or, as stated in the opinion of the Supreme Court in this case, "an exclusive and nondelegable control over the administration of an estate in its possession", when a trustee, having been given authority to do so, appears in a state court to litigate his right to property the state court has jurisdiction of all the incidents of the litigation, and its judgment in such action is binding upon him. Winchester v. Heiskel, 119 U.S. 450, 453, 7 S.Ct. 281, 30 L.Ed. 462; Mays v. Fritton, 20 Wall. 414, 22 L.Ed. 389; Jerome v. McCarter, 94 U.S. 734, 737, 24 L.Ed. 136;

McHenry v. La Société Francaise, 95 U.S. 58, 24 L.Ed. 370; Davis v. Friedlander, 104 U.S. 570, 26 L.Ed. 818; Grant v. Buckner, 172 U.S. 232, 238, 19 S.Ct. 163, 43 L.Ed. 430; Sherman v. Buckley et al., 2 Cir., 119 F.2d 280, 282; V Remington on Bankruptcy, 4th Ed., § 3285. The author, in the last citation, says: "Where the trustee resorts to the State court to recover fraudulently conveyed property or property otherwise recoverable, he is entitled to all remedies and all relief that would be afforded any other party litigant under the same facts * * *. And the rules of procedure of the State court will control * * * and the alleged fraudulent transferee is entitled to urge all defenses against the trustee." In Sherman v. Buckley et al., supra, Judge Learned Hand, speaking for the court, said: "The trustee [in bankruptcy] got the permission of the bankruptcy court to allow the action to be prosecuted in the state court. That necessarily involved a consent to such incidents as the exercise of that court's jurisdiction might involve."

■■ The district court in construing the mandate should first consider the fact, with all its implications, that its order authorizing the capture of the fugitive oil and gas by the trustee and the impounding of the proceeds of sale was affirmed by the Supreme Court. It should also consider the general rule that when a plaintiff seeks to quiet title in equity to land not in his possession but in the possession of a defendant claiming adverse title, he may as incidental relief demand judgment for costs, for a writ of possession, for an injunction against waste, for an accounting for products of the land taken by the adverse claimant in possession, and for damages for trespass. Correspondingly a defendant not in possession but claiming adverse title in such a suit may in his answer as a defense or as a counterclaim demand that his title be quieted against the plaintiff, and he may ask for the same incidental relief to which he would be entitled as a plaintiff.

■ All these considerations demonstrate that the decision of the question presented by the appeal is not within the jurisdiction of this court. The question calls only for the construction and enforcement of the mandate; and it is for the district court to which the mandate is directed to construe and execute such mandate; and if that court misconstrues or refuses to enforce it or attempts to "vary it" or "to in-termeddle with it", it is for the Supreme Court alone to construe and enforce its own mandate. We hold only that we are without jurisdiction to interfere in this instance. Having reached this conclusion, it is unnecessary to discuss further the contentions of the parties.

It is accordingly ordered that the appeal be dismissed for want of jurisdiction in this court.